FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 2 5 2008 ★
BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SHARON GORDON and RUFUS GORDON,

Plaintiffs,

v.

DAVOL INC. and C. R. BARD INC.,

Defendants.

Civil Action No. 08 2543

**ORIGINAL COMPLAINT**

KORMAN, J.

GOLD, M.J.

Plaintiffs, by and through their counsel, Milberg LLP, allege upon information and belief as follows:

## I. PARTIES

1. Plaintiffs SHARON GORDON and RUFUS GORDON (hereinafter referred to as "PLAINTIFFS") are individuals, citizens, and residents of Bronson, Levy County, Florida. At all times relevant to this Complaint, Plaintiffs were, and continue to be, lawfully married and residing together.

2. Defendant DAVOL, INC. (hereinafter referred to as "DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patch (hereinafter referred to as the "Kugel Patch") at 100 Sockanossett Crossroad, Cranston, Rhode Island 02920. DAVOL has as a registered agent in Rhode Island, CT Corporation Systems, located at 10 Weybosset Street, Providence, Rhode Island 02903. DAVOL focuses its business on products in key surgical specialties including hernia repair, homeostasis, orthopedics, and laparoscopy.

3. Defendant DAVOL was and is authorized to do business in the State of New York. Defendant DAVOL did and does business and solicits business in New York.

4. Defendant DAVOL derives substantial revenue from goods used or services provided in the State of New York and derives substantial revenue from interstate commerce.

5. Defendant C. R. BARD, INC. (hereinafter referred to as "BARD"), is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch.

6. Defendant BARD was and is authorized to do business in the State of New York. Defendant BARD did and does business and solicits business in New York.

7. Defendant BARD derives substantial revenue from goods used or services provided in the State of New York and derives substantial revenue from interstate commerce.

8. Defendants DAVOL and BARD (also collectively referred to as "Defendants") had and have as a registered agent for service of process in New York, CT Corporation Systems, located at 111 Eighth Avenue, New York, New York 10011.

9. Defendant DAVOL was and is a wholly owned subsidiary of defendant BARD.

## II. JURISDICTION

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the case is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This Court has authority to grant declaratory, injunctive, and monetary relief pursuant to 28 U.S.C. §§ 1343, 2201, and 2202, and to award costs and attorneys' fees under 28 U.S.C. § 2412.

12. This Court has personal jurisdiction over Defendants because they, at all times relevant, conducted substantial and continuous business in the State of New York and derived substantial revenue for goods used or services provided in the State of New York.

## III. FACTS

13. The Kugel Patch is used to repair ventral hernias, or hernias of the abdominal region. The Kugel Patch is made of two pieces of mesh that surround a flexible plastic ring. A surgeon makes a small incision in the patient's abdomen. The surgeon then folds the patch and places it inside the incision at the site of the hernia. The released ring is designed to spring back into its original shape, flattening the patch. The meshlike material serves as a substrate, allowing the hernia patient's own tissue to grow and assist in healing the hernia.

14. The Kugel Patch is manufactured by BARD and its subsidiary, DAVOL, who owns the patent on the device.

15. Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application, the Kugel Patch was authorized by the FDA as a Class II medical device.

16. Soon after the Kugel Patch was placed on the market, DAVOL and BARD began receiving notices of Kugel Patch defects and failures. Not only was there no

device history record (hereinafter referred to as "DHR") review performed—as called for by protocol—but also DAVOL and BARD actively and intentionally concealed these notices concerning defective and dangerous conditions associated with the Kugel Patch from Plaintiff Sharon Gordon (also referred to as "Plaintiff"), Plaintiff's physicians, the FDA, and the general public.

17. After the defective and dangerous Kugel Patch was already placed on the market, Defendants DAVOL and BARD conducted physician screenings and reviews beginning in 2002. According to protocol, these surveys and reviews were needed *before* placing the device on the open market. Furthermore, Establishment Inspection Report (hereinafter referred to as "EIR") investigations conducted by the FDA in early 2006 found that the post-market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, DAVOL and BARD failed to properly conduct and monitor their own post-market design validation physician surveys, including those which demonstrated unfavorable or "dissatisfied" results. DAVOL and BARD actively and intentionally concealed these complaints and concerns of the physician surveyors from Plaintiff, Plaintiff's physicians, the FDA, and the general public.

18. On or about April 14, 2005, Plaintiff underwent ventral incisional hernia repair surgery due to a recurrent hernia at North Florida Regional Medical Center in Gainesville, Florida. Plaintiff's hernia was repaired with a large oval Kugel Patch (LOT NO. 43AOD060, REF NO. 0010202).

19. The Kugel Patch implanted in Plaintiff was designed, manufactured, distributed, and sold by Defendants to be used by surgeons for ventral hernia repair

surgeries and was further represented by Defendants to be an appropriate, cost-effective, and suitable product for such purpose.

20. At the time of her operation, Plaintiff was not informed of, and had no knowledge of, the complaints, known complications, and risks associated with the Kugel Patch, nor was Plaintiff on notice that the Kugel Patch was to be recalled.

21. During the spring and summer of 2005, there was a substantial increase in the number of complaints with the Kugel Patch. Defendants' corporate executives were notified and thus made aware of these complaints. Nevertheless, in spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30, 2005 to initiate a partial Kugel Patch manufacturing hold, and it was not until December 8, 2005 that the Defendants finally commenced a distribution hold. (Defendants have since admitted that these product quality hold and release procedures were not applied on a timely basis.) Furthermore, Defendants actively and intentionally chose not to immediately inform Plaintiff, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with a Kugel Patch of the numerous complaints and complications of which the Defendants had notice nor of the product quality holds in effect.

22. On December 22, 2005, DAVOL recalled many sizes of the Kugel Patch under a Class I recall notice. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices. Plaintiff was given no notice of the Kugel Patch recall.

23. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that DAVOL and BARD:

a. had excluded ring failure events that should have been included from their complication database, reports, and recall notices;

b. misidentified numerous Kugel Patch complication events;

c. failed to apply the product quality hold and release procedures on a timely basis;

d. failed to properly follow the procedures for conducting a design validation review;

e. failed to identify all the actions necessary to correct and prevent the recurrence of further ring breaks and Kugel Patch complications; specifically, Defendants provided no justification for including only the extra large size of the Kugel Patch in the December 2005 recall;

f. failed to provide full information that Defendants knew regarding numerous Kugel Patch complaints;

g. failed to actually perform strength testing on memory recoil rings for all sizes of the Kugel Patch before putting them into the stream of commerce; and

h. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch complaints which resulted in numerous inconsistencies and errors in the raw data from the actual complaints and what was placed in the electronic databases.

24. On March 24, 2006, the initial Class I recall on the Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

25. On January 10, 2007, the existing recall on the Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product. As of that date, the total number of recalled Kugel Patches that were distributed amounted to more than 100,000 units.

26. After the Kugel Patch was implanted, Plaintiff's condition worsened. According to the medical records, Plaintiff experienced "persistent pain along the right side of the [hernia] repair." On or about July 2, 2005, Plaintiff was seen in the emergency room at North Florida Regional Medical Center in Gainesville, Florida, for severe pain in the left upper quadrant of her abdomen. She was treated with pain medication and advised to see her physician. On or about July 6, 2005, Plaintiff returned to North Florida Regional Medical Center and underwent surgery to remove the Kugel Patch due to inflammation at the site of the hernia repair.

27. Post-operatively, Plaintiff continued to have persistent abdominal pain and could not eat. A CT scan of the Plaintiff's abdomen taken on July 15, 2005 revealed a small bowel obstruction. Plaintiff was taken to the operating room where an exploratory laparotomy, lysis of adhesions, and surgical removal of a portion of the omentum were performed.

28. Plaintiff was required to remain in the hospital for twenty-five (25) days. These twenty-five (25) days were saturated with constant and overwhelming pain and

discomfort, requiring much pain medication. After Plaintiff was discharged, she spent the next several weeks recuperating in her home.

29. Because of the defective Kugel Patch and all the medical visits and surgeries it necessitated, Plaintiff has suffered and will continue to suffer physical pain and mental anguish. Plaintiff has also incurred substantial medical bills and has suffered loss of other monies due to the defective Kugel Patch that was implanted in her body.

30. Upon information and belief, DAVOL and BARD failed to comply with FDA application and reporting requirements regarding their Kugel Patch.

31. Upon information and belief, DAVOL and BARD were aware of the high degree of complications and failure rates associated with their Kugel Patch before it was recalled.

32. Upon information and belief, DAVOL and BARD were aware of the defects in manufacture and design prior to the recall of their Kugel Patch.

33. Upon information and belief, the complications and failures associated with the Kugel Patch are not limited to the sizes that DAVOL and BARD have already recalled.

34. Upon information and belief, DAVOL and BARD were aware of the defects in the manufacture and design of the non-recalled sizes of the Kugel Patch but chose not to issue a recall on all Kugel Patches even in the face of the high degree of complications and failure rates associated with their product.

## IV. CAUSES OF ACTION

### COUNT I:

### Negligence

35. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

36. Defendants DAVOL and BARD were negligent to Plaintiff in the following respects:

37. DAVOL and BARD at all times relevant to this Complaint had a duty to properly develop, design, manufacture, test, inspect, examine, package, label, produce, market, promote, distribute, supply, sell, prepare and/or provide proper warnings for use of the Kugel Patch.

38. DAVOL and BARD at all times relevant to this Complaint knew, or in the exercise of reasonable care should have known, that the Kugel Patch was of such a nature that it was not properly developed, designed, manufactured, tested, inspected, examined, packaged, labeled, produced, marketed, promoted, distributed, supplied, sold, prepared and/or provided with the proper warnings, and was unreasonably likely to injure Kugel Patch users.

39. DAVOL and BARD so negligently and carelessly developed, designed, manufactured, tested, failed to test, inspected, failed to inspect, examined, failed to examine, packaged, labeled, produced, marketed, promoted, distributed, supplied, and/or sold the Kugel Patch that it was unreasonably dangerous and unsafe for the use and purpose for which it was intended.

40. DAVOL and BARD were aware of the probable consequences of the Kugel Patch. DAVOL and BARD knew or should have known that the Kugel Patch

would cause serious injury, and they failed to disclose the known or knowable risks associated with the Kugel Patch. Furthermore, DAVOL and BARD willfully and deliberately failed to avoid those consequences and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Plaintiff.

41. Defendants DAVOL and BARD owed a duty to Plaintiff to adequately warn her and her treating physicians of the risks of breakage, separation, tearing, and splitting associated with the Kugel Patch and the resulting harm they would cause patients.

42. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, development, design, manufacture, testing, inspection, examination, packaging, labeling, production, marketing, promotion, distribution, supply, and/or sale of the Kugel Patch.

43. As a direct and proximate result of the duties breached by the Defendants, the Kugel Patch used in Plaintiff's hernia repair surgery failed, resulting in much pain and suffering, mental anguish, doctor visits, subsequent procedures, and hefty medical bills.

44. The limitations of liability set forth by CPLR § 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR § 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT II:**

**Breach of Express Warranty**

45. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

46. Defendants DAVOL and BARD expressly warranted that their Kugel Patch, including the subject patch, would be designed and constructed in a careful, diligent, and workmanlike manner, free of design and construction defects, and would be safe, reliable, and effective in performing its intended and foreseeable use.

47. Plaintiff, individually and through her physicians, relied upon the skill and judgment of Defendants DAVOL and BARD.

48. Plaintiff, individually and through her physicians, relied upon the representations and warranties of Defendants DAVOL and BARD.

49. All of the aforementioned representations were false, misleading, and inaccurate in that the Kugel Patch placed into the stream of commerce by the Defendants, including the subject patch, was defective, unreasonably dangerous, hazardous, and neither merchantable, fit, suitable, nor safe for its intended use.

50. The subject patch was not designed and/or constructed in a careful, diligent, and workmanlike manner, free of design and construction defects.

51. Defendants DAVOL and BARD thereby breached their express warranties.

52. As a direct and proximate result of Defendants' breach of their express warranties, the Plaintiff suffered serious injuries and is entitled to damages for her serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages, the amount of costs associated with medical treatment necessary to treat her injuries, and any and all consequential damages, punitive damages, as well as interest, attorneys' fees, and costs.

53. The limitations of liability set forth by CPLR § 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR § 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT III:**

**Breach of Implied Warranty**

54. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

55. Defendants DAVOL and BARD were and remain engaged in the business of developing, designing, manufacturing, testing, inspecting, examining, packaging, labeling, producing, marketing, promoting, distributing, supplying, and/or selling the Kugel Patch, including the subject patch, and its component parts, for ultimate use by and

implantation in the bodies of patients, including the Plaintiff, by and through physicians, hospitals, and other health-care providers.

56. Defendants DAVOL and BARD are merchants of the Kugel Patch.

57. By placing the Kugel Patch into the stream of commerce, the Defendants impliedly warranted and represented that their Kugel Patch, including the subject patch, was merchantable, fit, suitable, and safe for its intended use.

58. Plaintiff, individually and through her physicians, relied upon the skill and judgment of Defendants DAVOL and BARD.

59. Plaintiff, individually and through her physicians, relied upon the representations and warranties of Defendants DAVOL and BARD.

60. All of the aforementioned representations were false, misleading, and inaccurate in that the Kugel Patch placed into the stream of commerce by the Defendants, including the subject patch, was defective, unreasonably dangerous, hazardous, and neither merchantable, fit, suitable, nor safe for its intended use.

61. The Kugel Patch placed into the stream of commence by the Defendants, including the subject patch, was also inadequately contained, packaged, and labeled in that the Defendants misrepresented and/or omitted material facts regarding the safety, reliability, and effectiveness of the product, which was neither merchantable, fit, suitable nor safe for its intended use.

62. The defects in the Kugel Patch, including the subject patch, such as defective recoil ring welds, were present at the time the product left the hands of the Defendants and placed into the stream of commerce.

63. Defendants thus breached implied warranties of merchantability, fitness, suitability, and safety with respect to the Kugel Patch, including the subject patch.

64. Plaintiff was and remains an intended and foreseeable user of the Defendants' Kugel Patch, and as a direct and proximate result of the Defendants' breach of implied warranties, she suffered serious injuries and is entitled to damages for her serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages, the amount of costs associated with medical treatment necessary to treat her injuries, and any and all consequential damages, punitive damages, as well as interest, attorneys' fees, and costs.

65. The limitations of liability set forth by CPLR § 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR § 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT IV:**

**False Advertising**

66. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

67. New York General Business Law § 350 declares unlawful advertising that is false or misleading in a material respect in the conduct of any business or in the furnishing of any service.

68. The aforementioned acts, representations, and/or omissions by Defendants were deceptive and misleading practices and/or advertising within the meaning of New York's General Business Law.

69. In reliance upon the foregoing misrepresentations and/or omissions of material facts by the Defendants, Plaintiff and/or the Plaintiff's physicians were induced to and did, to their detriment, subject themselves to using the Defendants' Kugel Patch. Had the Defendants not made the foregoing misrepresentations and/or omissions of material facts, the Plaintiff and/or the Plaintiff's physicians could have avoided such risks, injuries, and/or damages as are set forth herein, and/or considered alternative actions, treatments, or products. The reliance of the Plaintiff and/or the Plaintiff's physicians was justified and reasonable because the foregoing misrepresentations and/or omissions of material facts were made by individuals and entities who were in a position to know the true facts.

70. As a direct and proximate result of the Defendants' deceptive and misleading practices and/or false advertising, the Plaintiff suffered serious injuries and is entitled to damages for her serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages, the amount of costs associated with medical treatment necessary to treat her injuries, and any and all consequential damages, punitive damages, as well as interest, attorneys' fees, and costs.

71. The limitations of liability set forth by CPLR § 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR § 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT V:**

**Deceptive Trade Practices**

72. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

73. Before, after, and at the time of the manufacture, marketing, promotion, distribution, and sale of the subject patch to Plaintiff, Defendants DAVOL and BARD possessed detailed technical information and had knowledge that their Kugel Patch posed potentially significant and life-threatening hazards to patients relying upon them.

74. Defendants DAVOL and BARD concealed this information from Plaintiff and her treating physicians, as well as the consuming public and physicians in general.

75. As set forth above, Defendants DAVOL and BARD had a duty to exercise reasonable care in the development, design, manufacture, testing, inspection, examination, packaging, labeling, production, marketing, promotion, distribution, supply, and/or sale of their Kugel Patch and its component parts, including the subject patch.

This duty included an obligation to ensure that the Kugel Patch and/or any component part did not fail, break, or splinter because of a design and/or manufacturing defect when used as instructed by the Defendants for its intended and foreseeable purpose. This duty also included a duty to warn of known defects that may lead to serious injury or risk of serious injury.

76. Defendants DAVOL and BARD made misrepresentations of material facts, including but not limited to:

a. misrepresenting that their Kugel Patch, including the subject patch, was fit for its intended use and of merchantable quality;

b. misrepresenting that their Kugel Patch, including the subject patch, was reliable;

c. misrepresenting that their Kugel Patch, including the subject patch, was safe and effective for the treatment of medical conditions such as those affecting Plaintiff;

d. misrepresenting that their Kugel Patch, including the subject patch, would function as intended when necessary;

e. misrepresenting that their Kugel Patch, including the subject patch, would not function improperly;

f. misrepresenting that their Kugel Patch, including the subject patch, was not defective;

g. misrepresenting that their Kugel Patch, including the subject patch, would not otherwise fail to function as intended when put to its expected, intended, foreseeable, and/or ordinary purpose; and

h. misrepresenting that their Kugel Patch, including the subject patch, was not inherently dangerous.

77. Defendants DAVOL and BARD made omissions of material facts, known to them and which they were obligated to disclose, including but not limited to:

a. omitting to disclose the material fact that their Kugel Patch, including the subject patch, was defective such that it and/or its component parts would break and/or splinter upon insertion and/or otherwise fail to function as intended;

b. omitting to disclose the material fact that the Defendants knew of numerous failures of their Kugel Patch;

c. omitting to disclose the material fact that their Kugel Patch, including the subject patch, was not "reliable";

d. omitting to disclose the material fact that their Kugel Patch, including the subject patch, was not safe and effective in the treatment of the medical conditions such as that affecting Plaintiff, for which it was intended;

e. omitting to disclose the material fact that their Kugel Patch, including the subject patch, would not function as intended when necessary; and

f. omitting to disclose the material fact that their Kugel Patch, including the subject patch, was inherently dangerous.

78. These misrepresentations and/or omissions of material facts were false and misleading at the time they were made.

79. Defendants DAVOL and BARD negligently and/or carelessly made the foregoing misrepresentations of material facts without basis or adequate information on which to accurately base those representations. Alternatively, the Defendants omitted the

foregoing material facts negligently and/or carelessly without basis or adequate information upon which to justify such omissions of material facts and/or with actual knowledge and information to make additional disclosures reasonable and appropriate.

80. Defendants had a duty to disclose all relevant information about the risks of their Kugel Patch, including the subject patch, to Plaintiff and her treating physicians under laws requiring Defendants not to engage in false and deceptive trade practices, such as alleged in this Complaint, because: (a) Defendants made representations and partial disclosures concerning the nature and quality of their Kugel Patch, including the subject patch, which they had a duty to correct; (b) Defendants were in a superior position to know the true state of facts about the dangerous and defective nature of their Kugel Patch, including the subject patch, and the risks the patch posed to Plaintiff; and (c) the effects and dangers posed by the defective Kugel Patch, including the subject patch, were not readily apparent.

81. In the alternative, when the Defendants made the foregoing misrepresentations and/or omissions of material facts, they knew or should have known them to be false or to be omissions of material facts, and such misrepresentations and/or omissions of material facts were made intentionally, deliberately, knowingly, wantonly, recklessly, and/or in a grossly negligent manner.

82. In reliance upon the foregoing misrepresentations and/or omissions of material facts by the Defendants, Plaintiff and/or the Plaintiff's physicians were induced to and did, to their detriment, subject themselves to using Defendants' Kugel Patch. Had the Defendants not made the foregoing misrepresentations and/or omissions of material facts, Plaintiff and/or the Plaintiff's physicians could have avoided such risks, injuries,

and/or damages as are set forth herein, and/or considered alternative actions, treatments, or products. The reliance of Plaintiff and/or the Plaintiff's physicians was justified and reasonable because the foregoing misrepresentations and/or omissions of material facts were made by individuals and entities who were in a position to know the true facts.

83. New York General Business Law § 349(a) declares unlawful any deceptive acts or practices in the conduct of any business, trade or commerce.

84. As a direct and proximate result of the Defendants' afore described conduct, misconduct, misrepresentations and/or omissions, Plaintiff suffered serious and permanent injuries, economic losses associated with all aspects of the care and treatment of her injuries as well as lost wages, and is entitled to any and all consequential damages and punitive damages. Plaintiff will also seek interest, attorneys' fees, and costs.

85. The limitations of liability set forth by CPLR § 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR § 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT VI:**

**Strict Product Liability**

86. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

87. Defendants DAVOL and BARD are strictly liable to Plaintiff in the following respects:

88. DAVOL and BARD developed, designed, manufactured, tested, inspected, produced, marketed, promoted, distributed, conveyed, and/or sold the Kugel Patch for hernia repair surgery.

89. The Kugel Patch subject to the Class I recall was defective because it failed to perform safely and effectively for the purpose for which it was originally designed. The Kugel Patch inserted into Plaintiff's body during her hernia repair surgery failed while in her body causing her to develop serious physical complications and ultimately required her to have a subsequent surgery to remove the defective mesh.

90. At all times relevant to this Complaint, the Kugel Patch, including the subject patch, was substantially in the same condition as when it left the possession of DAVOL and BARD.

91. The Kugel Patch implanted into Plaintiff was being used in a manner reasonably anticipated at the time it was implanted in her by her physicians.

92. At the time it left the possession of DAVOL and BARD, the Kugel Patch, like the one found in Plaintiff, was inherently dangerous for its intended use and was an unreasonably dangerous product which presented and constituted an unreasonable risk of danger and injury to Plaintiff as follows:

a. the Kugel Patch was sold in a defective condition by design and manufacture;

b. the Kugel Patch as designed and manufactured was unsafe to Plaintiff;

c. the Kugel Patch as designed and manufactured was unreasonably dangerous to Plaintiff;

d. the Kugel Patch did not perform safely as an ordinary consumer/patient, like Plaintiff, would expect;

e. the Kugel Patch as designed and manufactured was unsafe for its intended use;

f. DAVOL and BARD failed to warn the end user about the dangers and risks of their Kugel Patch;

g. DAVOL and BARD knew that the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

h. DAVOL and BARD failed to implement an adequate, safe, and effective "memory recoil ring" and/or ensure that its interaction with the mesh of the Kugel Patch could withstand the foreseeable stresses it would be subject to within the intra-abdominal space;

i. DAVOL and BARD failed to prevent migration of the Kugel Patch and/or its component parts from the initial site of the hernia repair surgery; and

j. any other acts or failures to act by DAVOL or BARD regarding the development, design, manufacture, testing, inspection, production, marketing, promotion,

distribution, conveyance, and/or sale of the Kugel Patch for hernia repair surgery as will be learned during discovery.

93. The limitations of liability set forth by CPLR § 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR § 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT VII:**

**Negligent Infliction of Emotional Distress**

94. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

95. Defendants DAVOL and BARD are liable to Plaintiff for negligent infliction of emotional distress in the following respects:

96. Plaintiff suffered severe emotional distress as a result of Defendants' negligent conduct in developing, designing, manufacturing, testing, inspecting, examining, packaging, labeling, producing, marketing, promoting, distributing, supplying, and/or selling the Kugel Patch for hernia repair surgery.

97. Plaintiff suffered severe emotional distress as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery.

98. DAVOL's and BARD's conduct in continuing to manufacture, market, promote, distribute, and sell the Kugel Patch after obtaining knowledge that it was failing and not performing as represented and intended showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum that will serve to deter DAVOL, BARD, and others from similar conduct in the future.

99. The limitations of liability set forth by CPLR § 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR § 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT VIII:**

**Intentional Infliction of Emotional Distress**

100. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

101. Defendants DAVOL and BARD are liable to Plaintiff for intentional infliction of emotional distress in the following respects:

102. Plaintiff suffered severe emotional distress as a result of the Defendants' extreme outrageous, intentional, willful, and reckless conduct in developing, designing, manufacturing, testing, inspecting, examining, packaging, labeling, producing, marketing, promoting, distributing, supplying, and/or selling the Kugel Patch for hernia repair surgery.

103. Plaintiff suffered severe emotional distress as a result of DAVOL's and BARD's extreme, outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery, in complete and reckless disregard for the safety of Plaintiff.

104. The limitations of liability set forth by CPLR § 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR § 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT IX:**

**Failure to Warn**

105. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

106. In the course of business, DAVOL and BARD designed, manufactured, distributed, and sold the Kugel Patch to North Florida Regional Medical Center in Gainesville, Florida, for hernia repair surgeries.

107. In performing Plaintiff's hernia repair surgery, the operating physician used and inserted into Plaintiff one of the Kugel Patches that North Florida Regional Medical Center purchased from Defendants.

108. At the time of the design, manufacture, and sale of the Kugel Patch, and more specifically at the time Plaintiff received the subject patch, it was defective and unreasonably dangerous when put to its intended and reasonably anticipated use. Further, the Kugel Patch was not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

109. DAVOL and BARD failed to provide any warnings, labels, or instructions as to the Kugel Patch's dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product involved significant dangers not readily obvious to the ordinary user of the Kugel Patch. DAVOL and BARD failed to warn of the known or knowable injuries associated with malfunction of the Kugel Patch including but not limited to rupture of the patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

110. The dangerous and defective conditions of the Kugel Patch, including the subject patch, existed at the time it was delivered by the manufacturer to the distributor. At the time Plaintiff had her hernia repair surgery, the Kugel Patch was in the same condition as when manufactured, distributed, and sold.

111. Plaintiff did not know at the time of her hernia repair surgery, nor at any time prior thereto, of the existence of the Kugel Patch's defects and dangerous propensities.

112. As such, Defendants breached their duty to warn about known defects and are liable to Plaintiff for the injuries she sustained and the costs incurred as a result of using the Kugel Patch.

113. The limitations of liability set forth by CPLR § 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR § 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT X:**

**Fraud**

114. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

115. In the course of business, DAVOL and BARD designed, manufactured, distributed, and sold the Kugel Patch for hernia repair surgeries.

116. At the time of the design, manufacture, distribution, and sale of the Kugel Patch, and more specifically at the time Plaintiff received the subject patch, it was defective and unreasonably dangerous when put to its intended and reasonably anticipated use. Further, the Kugel Patch was not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

117. Defendants DAVOL and BARD were aware of the dangerous and defective condition of their product and intentionally withheld this information from Plaintiff, Plaintiff's physicians, the FDA, and the general public even though these significant dangers were not readily obvious to the ordinary user of the product, even after a post surgical complication had arisen.

118. DAVOL and BARD fraudulently represented to Plaintiff, Plaintiff's physicians, and the general public that the Kugel Patch was a safe and effective product even though they were fully aware of the dangerous and defective nature of the Kugel Patch which likely could, and would, cause injuries such as those suffered by Plaintiff.

119. Plaintiff and her physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugel Patch to be implanted.

120. As a direct and proximate result of Plaintiff's reliance on DAVOL's and BARD's fraudulent misrepresentations and concealments, Plaintiff was seriously and permanently injured.

121. DAVOL's and BARD's conduct in continuing to fraudulently manufacture, market, promote, distribute, and sell the Kugel Patch while fraudulently concealing knowledge that their product was failing and not performing as represented and intended showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum that will serve to deter DAVOL, BARD, and others from similar conduct.

122. The limitations of liability set forth by CPLR § 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR § 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

## COUNT XI:

## Loss of Consortium

123. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

124. At all times relevant to this Complaint, Plaintiff Rufus Gordon was, and continues to be, lawfully married to and residing with Plaintiff Sharon Gordon.

125. By reason of the foregoing, Plaintiff Rufus Gordon was deprived of the services and consortium of Plaintiff Sharon Gordon, including, but not limited to

companionship, affection, support, and solace, and was caused to suffer loss of enjoyment of life, all of which caused Plaintiff Rufus Gordon to be damaged and entitled to judgment against Defendants.

126. By reason of the foregoing, Plaintiff Rufus Gordon was damaged by Defendants, who will be liable, and is entitled to damages in addition to an unspecified sum of exemplary damages to be determined at the time of trial.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, and for such other relief as may be fair and reasonable under the circumstances and for their costs.

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL COUNTS.**

DATED: June 25, 2008

Respectfully submitted,

**MILBERG LLP**

By:____________________________

Stephanie Hatzakos (SH-2825)
One Pennsylvania Plaza
New York, New York 10119
shatzakos@milberg.com
(212) 594-5300 (Telephone)
(212) 868-1229 (Facsimile)

*Attorneys for Plaintiffs*